Thank you, may it please the court. My name is Matthew Close. Colony Cove Properties, LLC purchased the Colony Cove Estates mobile home park for $23 million because it had a distinct and very well-founded expectation that the City of Carson would take the reasonable debt service into account when fixing rents in the park. Since purchasing the park five years ago, however, Colony Cove has been forced to operate at cash losses, approximating $1 million annually, because a few months after Colony Cove purchased the park, the City of Carson changed its rent control regulations. The City of Carson passed a formal resolution signed by the Mayor, certified by the City Clerk, to amend the implementing rent control regulations, which the City labels the guidelines. Those 2006 amendments were designed to overcome an earlier legal decision in a case against the City of Carson where there was a binding determination that the City's rent control scheme and implementing guidelines required the City to consider debt service when fixing rents. In order to try to justify future rent decisions that disregarded a park owner's debt service, the City needed to change its rent control rules. When Colony Cove purchased this park for $23 million, however, park owners, purchasers, appraisers, lenders recognized that at that price, the commercially reasonable debt service could be recovered pursuant to the rent control scheme, even while maintaining rents well below market levels. The reasonable expectation that debt service could be recovered was so probable that it materially affected the purchase price. I had been under the impression that the City could have considered debt service any way it wished to under the existing ordinance and guidelines as any other factor, and that it in fact had considered the very thing about which you now complain prior to the time that you acquired the park. Well, Judge Reimer, there is definitely some disputed facts on this question, but the facts are that everyone in the marketplace, particularly following the Carson Gardens decision in the state court, recognized and understood that the City now had an obligation to consider debt service when fixing rents. It may be the case that in discovery, the City of Carson will be able to show that in earlier applications, it had gotten away without considering debt service. Some park owners may have had almost no debt service. It may have been negligible. There may have been other factors. But that doesn't change the fact that when Carson Gardens called them on it and went to court on it, the courts ruled in a binding determination that when presented with a case, these guidelines and the practice in the City and everyone's understanding is that when an applicant wants and urges the consideration of debt service, and the City has no choice but to consider it, and the City didn't appeal that decision, that was a final and binding interpretation. So it may be that in discovery, they'll be able to show that some applications slipped through where debt service wasn't considered. I think we'll be able to show that was because debt service for this particular applicant was negligible or irrelevant, or this application or this applicant was urging a different methodology. But that doesn't change the fact that when Colony Cove was purchasing this park, there was a binding determination that acquisition debt service reasonably needed to be considered, and that's what the seller, other buyers, the bank that lent the money for this property, the appraiser that appraised it to support the mortgage, they didn't support this purchase price out of thin air. They didn't support it on the basis that the park is going to be forced to operate at $1 million a year annual cash losses. No. The facts will show that the reason the park was appraised at this value and purchased at this price was because there was an understanding, a reasonable probability that the law as it stood at that time would require the City of Carson to consider reasonable debt service when fixing the rent. And that the rents in this park were such that they could be increased in consideration of this debt service while still maintaining them well below market rents. If that's the case, counsel, then why didn't you go to court in California on the Kavanaugh adjustment? We chose to vindicate our federal rights in federal court, and Kavanaugh adjustment claim would not have been appropriate. What about the inverse condemnation claim? Well, the inverse condemnation claim also went to, the first requirement would have been to bring an administrative mandamus claim, where you can't raise the Kavanaugh adjustment issue, you don't even get to the inverse condemnation claim, and only a small universe of issues are properly before the court, and at the same time, the rent order is in effect and binding on us. I need to back up just a minute. So when you say that you chose to vindicate your federal rights, are you talking about a takings claim or are you talking about a substantive due process claim? Both. Okay. Well, we know that under a takings claim, after Williamson, you've got to exhaust your state remedies in some respect. Now, maybe you better start one more time and tell me why the Kavanaugh adjustment and an inverse condemnation action would not have been adequate for it. Well, the Kavanaugh adjustment, if we had gone to state court, would have been inadequate on these facts because of the inability, as we alleged in the complaint and can allege further facts, that in this particular case, the magnitude of the taking, coupled with the California procedure for eventually obtaining that Kavanaugh adjustment, coupled finally with the fact that this park may no longer be subject to rent control as administered by the city by the time the Kavanaugh process winds its way through, means that on the facts here, it is an inadequate remedy. It is not certain, it is not reasonable, and it is not adequate. And if you think about it, Your Honor, we're talking about a couple thousand dollars per space in the park. By the time we get the Kavanaugh adjustment, we could have $10,000 to $15,000 of takings that need to be adjusted for and rents that are now at 70% of market. It might take another 10 years to prorate that, and we can allege all these facts that on the facts of this case, it would probably take 25 years' worth of Kavanaugh adjustments to recoup all that, and would not be a reasonable approach either. So I don't think it's that Williamson County requires us to go to state court first. It's that it only requires that if there is a reasonable, certain, and adequate state court remedy, that we pursue it. But we have alleged facts and can allege more facts to show that in this particular case, a Kavanaugh adjustment, given the time involved, the money involved, the amount of space between the regulated rents that we're entitled to and market rents, and the possibility of a conversion to tenant ownership, renders the Kavanaugh adjustment just an inadequate remedy here. And, in fact, the inverse condemnation wouldn't have been a suitable argument at that point because the California courts would have required us to exercise the Kavanaugh adjustment procedure first. So we would have probably had three rounds of state court litigation, while Colony Cove is losing approximately a million dollars in cash per year, immediately after buying the park at fair market value, while we go through this process of trying to- Roberts. I understand, counsel. I understand that of the reasons that you've given me, the one that sounds most persuasive is the problem that you're converting these over to condos. And thus there could be no future adjustment on rents because there won't be any future rent to be collected because you're moving them to condominiums. If that, if you had been prevented, if you'd gone in and said we need a Kavanaugh adjustment, but, by the way, we think the whole thing is moot because we're converting them to condos tomorrow, would you still have had an inverse condemnation action in California for the past rents? Completely unclear and uncertain because California courts haven't addressed that and don't give guidance as to what the remedy is. But I think you can read from Kavanaugh a pretty strong argument that we would not have because we did not get the Kavanaugh adjustment. Right, but I just gave you a hypothetical in which the Kavanaugh adjustment would, the court would acknowledge that your Kavanaugh adjustment was moot. That is, there's no possibility of recouping your past losses from your future rents because there are no future rents to be collected. Now, surely California is not so foolish as to say you failed to exhaust your administrative remedies because you didn't go after a remedy that we can't possibly give you. Well, but the California Supreme Court in the Gallin case had the opportunity to address this situation and didn't. They left it open in saying try the Kavanaugh adjustment. We're not sure what would happen if that was not, I mean, they contemplated. We have lots of open questions, I'm sure, in both state jurisprudence and federal jurisprudence. It doesn't mean that we're not required to exhaust our remedies just because we have open questions. Well, the exhaustion requirement for the remedies is only based upon the assumption that there is a reasonable, certain, and adequate remedy to be exhausted. And that's what the state litigation requirement in Williamson talks about, adequate, certain, and reasonable remedy. Given the magnitude of these losses, the pending conversion, and the state of California law in terms of the Kavanaugh process, I think it's not the case, as you posit, that we would get this quick and prompt ruling that Kavanaugh is moot. What would happen, in fact, is that we'd have several rounds of up and down between the administrative agency and the state court while this played itself out and while Colony Cove was losing millions of dollars a year and moving closer and closer to the conversion. So in practice, this is not what Williamson County had in mind when they said we're going to defer to a reasonable, adequate, and certain state court remedy. And so I don't know if that's addressed Your Honor's question, but that's what we're confronted with on the ground. Those are the facts on the ground. And we can allege more facts. The district court seemed to have agreed that this was a fact issue but didn't think we had alleged the right mix of facts. We had alleged that only one park owner had previously obtained a Kavanaugh adjustment in the past. The district court disregarded that factual allegation because we didn't give the denominator, how many had unsuccessfully sought to achieve that. But we were given no opportunity to amend the complaint nor any direction from the district court as to what they expected in this regard. I would like to save some of my time for rebuttal, but if the court has any questions at this time, I'd be happy to address them. Certainly, you may do that. Thank you very much, Judge O'Connell. Good morning, members of the panel. My name is William Winder. I have the good fortune of being the city attorney of the city of Carson. As this court wisely indicated when it solicited supplemental briefs from us, as the facial claims in this case are dispositively by the en banc decision of this court in Guggenheim. In fact, this case is much weaker than the facts in Guggenheim. What is weak about this case is the notion that somehow amending the guidelines in 2006 changed the rent control law. That's simply false. And I would urge the court to carefully read Resolution 06-149, found at pages 81 and 82 of the record, and let me read to you what the guidelines actually say, not the clever artifice of words that are used in the complaint. The reason the district court was unwilling to allow amendment in this case, and properly so, is that when you take judicial notice of the facts on the grounds, this house of cards of words, this integrated rent control scheme, which is the basis of this action, disappears. Here's what the guidelines said. It says the court, the board, may also consider a maintenance of net operating income analysis. And, Judge Reimer, you were dead on correct when you asked the question, didn't the board already have that authority? The very case that opposing counsel tried to argue caused the change in these guidelines, which is wrong, as a matter of fact, is the State Carson law was, and is to this day, pre and post-guideline amendment. I don't like to read to the court what's in the brief, but this is very important to the central issue in this case. Quote, nothing in the city's ordinance requires the board to apply any particular formula or methodology without deviation. Indeed, the city's guidelines specifically state, in this case talking about a different methodological analysis, the gross profits maintenance analysis, quote, is an aid to assist the board in applying the factors of the ordinance, and is to be considered together with the factors in the ordinance, other relevant evidence, and the purposes of the ordinance, and is not intended to create any entitlement to any particular rent increase. Oh, by the way, when the city amended its guidelines in 2006, what does it say at the very end of the amendment? Quote, a maintenance of net operating income analysis is not intended to create any entitlement to any particular rent increase. Why is this case even weaker than the facts in this court's en banc panel decision in Guggenheim? At least in Guggenheim, the entire rent control scheme had to be reenacted. In this case, the city's rent control scheme, to use the artifice of the plaintiff's complaint, has been around since 1979 and has not been amended. And in the intervening years and prior to the 2006 guideline, the California Supreme Court has upheld the constitutionality of this ordinance. This court upheld it in Carson Harbor Village 1 in 1984, and again in Carson Harbor Village 2 in 2004. Therefore, Guggenheim controls. Any facial attack on this ordinance ripened, and the statute began to run in 1979, not when Colony Cove purchased this park. Guggenheim mandates that all the facial claims in this case be dismissed without leave to amend, and the district court's opinion in that regard needs to be affirmed. That leaves only the as-applied claims left. And as Judge Bybee correctly began the line of inquiry, the question is, must you exhaust state remedies? Guggenheim's an interesting opinion because it tries to grapple with but ultimately doesn't resolve whether or not the adequacy of state remedy requirement in Williamson is mandatory or prudential. I will say only this on that subject. Every decision of this court applying Williamson in the rent control context has argued that it's mandatory. But I would like, for the purposes of my argument, without conceding my position that it's mandatory, tell you why even if this panel were to conclude that the original panel in Guggenheim, a decision that's now been vacated and overturned, did conclude that it was prudential. It did. And I would like to — It was a very well-written opinion. Extremely well-written, I might add. Thank you. I appreciate that. But it — I think there were a number of cases that were cited in there that did suggest that the Supreme Court had determined that the — that Williamson was prudential and not jurisdictional. I don't think anything is contradicted in the en banc opinion. You know, I appreciate the Court's position on that, and I accept that. But let's assume for the sake of argument that it is prudential. Why should you nonetheless deem this — the as-applied claims as unright? Because of the extraordinarily powerful remedies that are available through the California state court system. It's a three-step process in California. You start with Galand. Galand is the so-called writ and remand procedure of state law. If the decision is inadequate, you seek an expedited writ of mandate under 1094.6 of the California Code of Civil Procedure, which gives you an expedited writ review of the decision of the administrative agency. If that review is successful, the case is remanded back to the rent board with an order that an appropriate adjustment be made on rehearing. That adjustment can include both retroactive rents under Kavanaugh and prospective rents consistent with the order of the court in Galand order that's issued by the opinion of the court. I want to take your question, Judge Bybee, and explain to you why this remedy is so powerful. Post this case, this park has been converted. What does that mean? On the date of conversion, on the date of the sale of the first space in this mobile home park, Carson's rent control ordinance goes away. What's the effect of conversion in terms of the state law remedies? It fixes the boundaries of the damages that are potentially awardable if an as-applied claim is deemed to have merit in state court. That date of conversion cuts off the flow of damages. So let us assume that on writ and remand, which is going on, by the way, right now before the California Court of Appeals, the trial court in California wisely concluded that there had been no wrongful action on the part of my client, the mobile home park rental review board. And we're confident that the state court appeals will affirm that. But setting that aside for a moment, assuming there were a reversal and a remand, the rent review board would be required to prospectively increase base rents, would be required to award a retroactive Kavanaugh adjustment, which if it could not be paid by the residents, would then give rise to an immediate inverse condemnation claim. So now that we have conversion of this mobile home park, we have a fixed date within which to measure the damages that Mr. Close complains about so gravely in state court. And state court is uniquely and particularly well qualified to fix and measure those damages if any exist. And I respectfully posit none will be found to exist. This is a case that even if Williamson is prudential, as articulated in the first iteration of Guggenheim, even if it is, this is a case where this court should affirm the decision of the district court to refrain from considering the as-applied claims as unright. Finally, at the end of the day, based on our request for judicial notice, if you're not happy with abstaining based on rightness, we would urge you to abstain based either on Younger or on Holman, both of which will allow the state court process to complete itself, which potentially can result in a remedy which will make the federal forum moot and unnecessary. And I might add that notwithstanding the fact that we were criticized for raising Pullman for the first time on appeal, we've cited to you in our request for judicial notice the Gordon decision, which is a decision out of this court which expressly authorizes us to raise Pullman abstention where appropriate for the first time on appeal. And why does that have to be the state of the law? Because until the district court tossed my opponent out of federal court, no state court claim had been filed, even though there was a state court writ appended to the federal court action. That case is now active. It's ongoing. It's pending on appeal before the second appellate district in downtown Los Angeles. Clearly, the abstention notions articulated in Younger didn't ripen to a point that we could raise them until my opponent learned its lesson and filed its action where it properly belonged in state court. Younger is applicable even if you decide that Williamson is prudential and that exercising and that it would not be prudential to deem the as-applied claims as unright. At a minimum, at a minimum, members of the panel, you should abstain until the state court process has completed. Unless there are further questions, I'll submit. Thank you. Okay. What do the guidelines say? The guidelines tell us the information that an applicant must provide. The guidelines tell us that an application that does not provide this information will be deemed incomplete. The guidelines tell us that a fair return application must be made at the time of a regular rent increase. The guidelines tell us that in amortizing capital improvements, the following schedule shall be used. The 2006 amendments that we heard so much about, what did they say? They say the 2006 amendments themselves say that the guidelines govern the administration of the rent control ordinance. The rent decision against Colony Cove denying our rent increase, what did it say about the guidelines? What did the rent control board think about those guidelines? Again, I think this is going to be powerful evidence on remand as to do these guidelines, is this a meaningless act or is this something that really matters in the city of Carson? The rent control board said in applying the guidelines, the board is admonished to consider the following. The board in this case refused to consider our evidence of comparable park rents. Why? Because our guidelines require that comparability be based on comparisons with mobile home parks within the city. In our case, the board refused to consider certain gross profit information. Why? Because the guidelines directed how it should be used and the guidelines required the performance of a certain kind of MNOI analysis. So the evidence is actually overwhelming that although the ordinance is of course superior to the guidelines and state law is superior to local law and constitutional law is superior to them all, the guidelines pack the force of law. And that's exactly what the state court found in Carson Harbor, in Carson Gardens rather. I'd like to address Guggenheim for one second. You only get to the argument that Guggenheim is controlling if you ignore the 2006 amendments and you assume that that resolution, part of the city's public records, is a nullity and a legally irrelevant act. Otherwise, if you recognize and accept the factual allegations and the actual text of those guidelines and the resolution and recognize these guidelines do have significant impact on individual rights, on the park owners, on how the board reviews these applications. If you do accept that, then we have an entirely different situation than in Guggenheim because we have a real change in the rent control regulations after the acquisition of the park. That's the difference between this case and Guggenheim. And I think finally, I want to point out, we're not arguing that the guidelines require a specific formula or a specific methodology or a specific amount of rent increase. This was the argument made to the Carson Gardens court. And they said, we agree, but they do require consideration of debt service. Go use a methodology you want. Go use a formula you want. But it has to consider debt service. And that's all that we were counting on and relying on when we paid $23 million for this park, and that's what the lenders and appraisers all expected. Not a specific formula, not a specific methodology, but a consideration of debt service. I see that I've gone over my time, and I appreciate the court's indulgence. Thank you, counsel. The matter of disargument will be submitted. The court will see my recess for the day. Thank you.
judges: Alarcon, Rymer, Bybee